```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND
```

CALVIN WALKER,
    Plaintiff,

    v.                                          C.A. No. 15-087L

GOVERNOR GINA RAIMONDO,
    Defendant.

## O R D E R

This matter is before the Court on the Plaintiff's Objection to the Report and Recommendation of Magistrate Judge Lincoln Almond, dated September 11, 2015 (ECF #36). In the Report and Recommendation ("R & R"), Judge Almond recommends that Defendant's Motion to Dismiss Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction be granted. The Court hereby affirms and accepts the R & R, granting Defendant's Motion to Dismiss Plaintiff's complaint, but on grounds additional to those articulated by Magistrate Judge Almond.

### **Background and travel**

Plaintiff Calvin Walker has been a frequent litigant in Rhode Island's courts. In 1987, he was convicted of nine related counts of first degree sexual assault, and breaking and entering with intent to commit larceny in connection with a violent home invasion of a family of vacationers in Newport. He is currently incarcerated at the Adult Correctional Facilities (the "ACI") in Cranston, Rhode Island, where he is serving a sixty-year

sentence. He appealed several aspects of his conviction, including the legality of the search of his hotel room where he was apprehended shortly after the home invasion, issues with the pretrial line-up, and objections to the jury instructions provided at trial. His appeal was delayed due to the relocation of the trial stenographer, but was ultimately denied by the Rhode Island Supreme Court in 1995. State v. Walker, 667 A.2d 1242 (R.I. 1995).

In 2006, Walker began a campaign of litigation concerning his treatment at the ACI, starting with a 45-page petition for post-conviction relief filed in the Rhode Island Superior Court for Newport County. He explained that he had been working on an initiative concerning improving prison conditions that included a proposed pay increase for prison guards to be achieved by exempting them from federal income tax, and a plan to create a national military force of former inmates to fight in Iraq. In December 2005, on the instruction of then-Lieutenant Walter Duffy,[1] prison personnel searched Walker's cell and confiscated all his written materials, including his 600-page book on prison reform.

In addition, disciplinary proceedings were initiated against him and he was charged with "Engaging in or Encouraging a Group

---

[1] In his present Motion, Walker identifies Walter Duffy as a captain.

Demonstration and/or Activities," as well as theft of photocopies and other prohibited conduct. He was put in solitary confinement for 68 days.

In his petition, Walker alleged that he was denied his constitutional right to due process at the ACI's disciplinary hearings, and that his solitary confinement was wrongfully imposed. In a written decision, Judge Edwin Gale described Walker's Petition as "devoid of merit." The Petition was denied, based on Walker's failure to state a claim that was actionable under post-conviction statutes, and based on the Superior Court's lack of jurisdiction to provide post-conviction relief. The Superior Court indicated that complaints such as Walker's, if sufficiently egregious to state a constitutional claim, should proceed in federal court.

In 2008, Walker filed a Petition for Writ of Habeas Corpus in Rhode Island Supreme Court. This action again focused on the conduct of Lieutenant Duffy. Walker stated that he had complaints about Duffy's treatment of him and that he had been assembling documentation, draft pleadings, exhibits and research in order to file civil action against Duffy. However, in the midst of this, Duffy ordered guards to raid Walker's cell and confiscate these materials, as well as correspondence Walker was preparing to send to news reporters. In his Petition, Walker characterized this confiscation as an unreasonable search

undertaken in the course of denying Walker his constitutional right of access to the courts. The Petition was denied by the Supreme Court without prejudice to Walker seeking relief in the appropriate forum.

In 2009, Walker filed a 75-page Petition for a Writ of Mandamus in the Rhode Island Supreme Court, naming as defendants ACI Director Ashbel T. Wall and then-governor Donald Carcieri. In this filing, Walker maintained that white and non-white inmates at the ACI were treated disparately at the ACI, with different sets of rules and punishments.[2] According to Walker, non-white inmates were significantly more limited in their permitted use of the prison's law library. Whereas white inmates were permitted to assist their fellow inmates with legal projects, Walker had been punished by being placed in solitary confinement for 21-day periods after being found with legal materials relating to other inmates. Further, he alleged that white inmates were allowed to use the library's computers and word processors, whereas non-white inmates were only permitted to share a couple of old typewriters. In his Petition, Walker padded his central complaints with many pages of documentation concerning national rates of incarceration analyzed by race. Walker's Petition was summarily denied by the Clerk of the Supreme Court.

---

[2] Walker is African-American.

Walker brought similar allegations in 2010, in the form of a Motion for a Restraining Order and Preliminary Injunction, against Director Wall, in Newport County Superior Court. Walker's primary focus was on prison staff's retaliation against non-white inmates who attempted to use the law library. Wall's motion to dismiss Walker's motion was granted in 2011.

Walker's persistence has now brought him to federal court, with a Motion for a Temporary Restraining Order and Preliminary Injunction containing allegations similar to those in his prior lawsuits. According to the civil cover sheet, Walker's Motion sets forth a claim under 42 U.S.C. § 1983 for "denial of access to courts by state prison officials."[3] Five additional inmates filed motions to intervene in the lawsuit and these motions were denied by Magistrate Judge Almond in July 2015. As outlined in his Petition, Walker seeks to enjoin certain discriminatory practices concerning access to the prison law library and its equipment. Walker also seeks copies of documents previously confiscated by prison staff, including legal documents and correspondence. In addition, Walker would like to be able to make telephone calls to certain prison advocacy groups, and be provided with certain books and research papers that he would like to review. He also seeks $50 million in compensatory

---

[3] The Petition originally named Governor Lincoln Chafee as the sole defendant. He has since been replaced by Governor Gina Raimondo.

damages, and $50 million in punitive damages.

Walker alleges an ongoing practice of prison staff limiting his access to the law library, confiscating and destroying his legal documents when he does manage to produce them, and then wrongfully punishing him with solitary confinement.  Since he began to keep a log of punishments in 2005, Walker has spent over 645 days in solitary confinement.  Walker alleges that the law library's typewriters produce automatic carbons, allowing the staff to monitor his, and other inmates', paperwork.  That, along with the collusion of white inmates who work in the library in exchange for their cooperation with the guards, enable the prison guards to identify and seize any legal draftings that relate to the guards' conduct.  Much of Walker's present 99-page brief includes the same incidents complained of in his previous lawsuits.  In addition, the brief is replete with quotations, excerpts from other publications, and statistics concerning the state of race relations in the United States.  For the most part, it makes for troubling and compelling reading.

### *Constitutional right of access to the courts*

Walker's charges implicate several constitutional provisions.  Among them are: the Fourth Amendment's protections against unreasonable searches and seizures; the First Amendment's right to be protected from retaliation for petitioning the government for redress; and the Fourteenth Amendment's rights to

procedural due process and equal protection of the laws regardless of race.  Walker correctly states that the right of access to the courts, in order to pursue post-conviction relief, is a fundamental right afforded by the Constitution.  <u>Johnson v. Avery</u>, 393 U.S. 483, 485 (1969).  After <u>Johnson</u>, the Supreme Court elaborated on this right in <u>Bounds v. Smith</u> where it held that:

> ...the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation of and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

430 U.S. 817, 828 (1977).  However, that right has not been interpreted to mean unfettered access to a prison law library.  <u>See</u> <u>Bradley v. Mason</u>, 833 F.Supp.2d 763, 774 (N.D.Ohio 2011).  Prison officials may restrict "the time, place, and manner in which library facilities are utilized," and "even highly restrictive procedures do not violate constitutional mandates if inmates still have 'meaningful access' to the courts."  <u>Eason v. Nicholas</u>, 847 F. Supp. 109, 112 (C.D.Ill. 1994).  Of course, the analysis becomes more rigorous if restrictions are imposed on the basis of race.  <u>Bradley</u>, 833 F.Supp.2d at 774.

### ***Defendant's arguments***

The State of Rhode Island does not address any of Walker's complaints about access to the law library or its alleged racist

policies, but instead argues that the Motion must be denied on three technical grounds.  First, Walker's claims, recycled from his earlier lawsuits, are barred by Rhode Island's three-year statute of limitations.  Second, his long-winded and meandering pleading violates Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim."  Not only is it difficult to identify the precise claims being made, but the pleading's wild assertions and conclusory allegations are not in conformity with the Supreme Court's requirements that a complaint state a plausible claim for relief supported by specific facts, as set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Finally, the State argues that Walker's motion for a temporary restraining order does not meet the criteria for injunctive relief; specifically, Walker has not demonstrated a potential for immediate, irreparable injury, or a likelihood of success on the merits.

Magistrate Judge Almond generally concurs with the State's arguments.  Walker has been making the same claims of constitutional deprivations since at least 2010, and getting nowhere with them.  These incidents are now outside the statute of limitations.  His Petition runs afoul of Rule 8(a) in that it is unnecessarily long, it's conclusory and it's confusing to the extent that it fails to put Defendant on sufficient notice of the claims against her.  Finally, Magistrate Judge Almond suggests

that Walker has chosen the wrong legal vehicle to achieve the remedy he seeks, because a motion for injunctive relief, if successful, only preserves the status quo.  Moreover, Walker fails to establish a likelihood of success on the merits, as his claims are time-barred.

Although Walker, as a *pro se* plaintiff, with additional barriers imposed by his incarceration, is entitled to liberality and leeway in imposing legal standards, Hughes v. Rowe, 449 U.S. 5, 9 (1980), it is hard to dispute the State's arguments or Judge Almond's analysis.  As for the statute of limitations, this Court recognizes that Walker has indeed been making many of the same allegations of constitutional deprivations since 2006.  On the other side of the coin, it is ironic, and no doubt intolerably frustrating to Walker, that his state court lawsuits were tossed out for various technical shortcomings, including the directive that his complaint belonged in federal court.  Now, in federal court, he is instructed that he has waited too long to bring his complaint.  Moreover, Walker is complaining of an ongoing pattern of misconduct, and a couple of instances he has described have taken place within three years of his Motion.  Walker claims that in 2012 Captain Jeffrey Aceto instructed prison guards to enter his cell and destroy evidence concerning his conviction that Walker claims was exculpatory.  In 2013, Lieutenant Oden instructed prison guard Michael Hetu to confiscate a legal

document in Walker's possession that he intended to use to expose racist prison policies.  Following the confiscation, Walker was disciplined for "misusing electronic equipment," and put in solitary confinement.  And, in 2014, Lieutenant Boffi ordered guards to confiscate NAACP pamphlets that Walker intended to use as an exhibit in the present lawsuit.[4]  Walker had photocopied these documents in the prison law library and was disciplined for "Disobeying a Clearly Stated Order in a Manner that Conveys a Deliberate Challenge to Authority and Jeopardizes the Safety, Security, and/or Orderly Operation of the Facility."

Nonetheless, it is the opinion of this Court that quibbling over whether or not Walker's claims are barred by the statute of limitations sidesteps the most significant reason that the State's motion to dismiss Walker's Petition must be granted.  That reason is that Walker has failed to exhaust his administrative remedies, as required by federal law, the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("the PLRA").

### *The Prison Litigation Reform Act*

The PLRA was enacted by Congress in 1995 to eliminate federal court interference in prison management, and to slow the flow of frivolous prisoner litigation.  The Act imposes a strict requirement that prisoners must exhaust all available

---

[4] Walker states that he is the president of the Rhode Island Prison Chapter of the NAACP.

administrative remedies prior to filing any lawsuit based on federal law concerning prison conditions.  42 U.S.C. § 1997e (a). In <u>Woodford v. Ngo</u>, the Supreme Court explained the Act's impact:

> Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.  This is particularly important in relation to state correction systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."

548 U.S. 81, 94 (2006), (<u>quoting</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 491-2 (1973)).  The newly-strengthened exhaustion provision was intended to be mandatory, thereby eliminating discretion on the part of the district courts.  <u>Id</u>. at 85.  Moreover, a prisoner is required to pursue administrative procedures regardless of whether or not those procedures can afford him or her the sought-for relief.  "There is no futility exception to the PLRA exhaustion requirement."  <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 35 (1st Cir. 2002).  While the failure to exhaust administrative remedies is generally an affirmative defense that must be established by the defendant, "[A]n inmate's complaint is subject to dismissal for failure to exhaust administrative remedies under the PLRA if the allegations in the complaint, taken as true, suffice to establish the failure to exhaust."  <u>Facey v. Dickhaut</u>, 892 F.Supp.2d 347, 354 (D.Mass. 2012).  Such is the case herein.

Defendant has not raised Walker's failure to exhaust as an affirmative defense. However, Walker, a practiced jailhouse lawyer, raises the issue himself in his Motion:

> Plaintiff Walker is, by law, excused from complying with P.L.R.A.'s "EXHAUSTION REQUIREMENT". As the above-stated paragraphs have clearly set forth, state prison employees have EFFECTIVELY "INHIBITED" Plaintiff Walker from utilizing the administrative grievance process; as the said state employees (with the full backing of ASHBEL T. WALL, II, the Director of the Rhode Island Department of Corrections) have carried out a pattern of DENYING Plaintiff Walker, among other things, "ACCESS TO THE COURTS" (by DENYING him ACCESS TO THE PRISON'S "Inmate Law Library", where the said grievances are obtained, as the said prison employees have established that they will throw Plaintiff Walker in SOLITARY CONFINEMENT if and when he steps foot into the said Inmate Law Library and begins to <u>type</u> or <u>make copies</u> on the copy machine).

Plaintiff's Motion for a Temporary Restraining Order, p.68, ¶46. In the last ten years, Walker has filed four lawsuits, containing hundreds of pages of allegations and supporting material. For example, Walker's present Motion is 76 pages long and is type-written. It is accompanied by a 23-page attachment of photocopied exhibits. Although the Court has no doubt that the relationship between Walker and ACI staff is adversarial, the Court does not find Walker's explanation for failing to exhaust administrative remedies to be credible. This Court does not intend to micro-manage the ACI's regulations concerning use of the law library and its equipment. For these reasons, the Court dismisses Walker's Motion without prejudice, and with the hope

that the thorough pursuit of the appropriate administrative remedies will result in the successful resolution of his claims.

## **Conclusion**

The Report and Recommendation issued by Magistrate Judge Lincoln D. Almond on September 11, 2015, in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1).  Defendant's Motion to Dismiss Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is granted.  Therefore, this case is dismissed in its entirety.

It is so ordered.

/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
Date: April 12, 2016